835 P.2d 86

**Virginia LOPEZ, as Mother and Next Friend of David L. Lopez, Plaintiff–Appellant,**

v.

**NEW MEXICO DEPARTMENT OF HUMAN SERVICES, INCOME SUPPORT DIVISION, State of New Mexico, ex rel., HUMAN SERVICES DEPARTMENT, Defendant–Appellee.**

**No. 12129.**

Court of Appeals of New Mexico.

April 30, 1992.

· Kathryn M. Wissel, Levy & Geer, P.A., Albuquerque, for plaintiff-appellant.

John E. Dubois, General Counsel, Lee Ann McMurry, Asst. General Counsel, Human Services Dept., Santa Fe, for defendant-appellee.

Elizabeth J. Church, Committee for Delivery of Legal Services to People with Disabilities, Albuquerque, amicus curiae.

## OPINION

MINZNER, Judge.

Virginia Lopez (Lopez), mother and next friend of David Lopez, a severely disabled adult, appeals from a decision of the New Mexico Human Services Department (Department). Lopez raises two issues on appeal: (1) whether the decision of the hearing officer was arbitrary, capricious, or contrary to law; and (2) whether the decision of the hearing officer is supported by substantial evidence. We remand with directions to the hearing officer, to the Department, and to the parties.

### I. FACTS.

David Lopez is twenty-two years old and severely disabled. He suffers from seizure, behavior, and communicative disorders. His mother characterizes him as mentally retarded and autistic. He has always lived at home, and his parents and three siblings have been his primary caretakers. He attended public school in Albuquerque until he turned sixteen; then he was placed in a day program at Adelante Development Center, Inc. (Adelante)

through his Albuquerque Public School (APS) special education program.

David is a client of the Coordinated Community In–Home Care Program (CCIC), which is administered by the Department. This program, designed to prevent unnecessary institutionalization of persons with disabilities, provides the Department money with which it can contract for certain services provided to an individual at either his home or a group home. David receives services under the program component serving developmentally disabled individuals (the "DD-waiver program").

Services provided as part of the program include case management, day programs, respite care, behavior management, family education and training, and specialized non-medical transportation. Human Servs. Register, Medicaid Program of Coordinated Community In–Home Care Servs. for Developmentally Disabled Individuals § 310.-2060 (April 4, 1984) [hereinafter "Medical Assistance Manual"]. "Case managers provide a link between the individual and the providers of care; provide and develop appropriate care for each individual; coordinate and develop community resources needed for community and in-home care." Id. § 310.2061. The case manager's duties include "[d]eveloping and ensuring the implementation of a plan of care that will assist the individual in retaining or achieving the maximum degree of independence in daily living, while assuring [sic] the individual's health, safety, and emotional well-being and to ensure that the individual's changing needs are met over time." Id. § 310.2061(3).

In April 1988, Pat Syme (Syme), a University of New Mexico Hospital employee and David's case manager under a contract with the Department, developed a plan of care for him. The plan specified the services that he needed and would receive under the waiver program. The plan specified that David would receive day services from Adelante five days a week, behavior management therapy from Specialized Behavior Management Services (SBMS), and behavior management implementation and respite services from Alta Mira. At that time, David's day services at Adelante were provided by APS special education, and APS would continue to provide that service until David turned twenty-one, which was in 1989. His day services would then also be funded by the waiver program.

Difficulties arose between the family and the care providers soon after the April 1988 care plan was implemented. The record indicates that the plan was revised five times; the last revision was approved in July 1989. The problem concerned two specific services David was to receive.

The first problem area was with the Department's furnishing of respite care, which is a service designed to give the disabled individual's primary care-givers a break from their responsibilities. David was allocated 336 respite hours for the year. The family could take it all at once or in hourly increments. However, if the family did not use the entire allocation within the plan year, the unused hours would be forfeited.

The second problem area involved the family's refusal to participate in behavior management therapy. After an initial evaluation period during which a professional evaluated David in his home, behavior management implementation services were to be given by Alta Mira, also in the home. SBMS apparently provided staff for respite services, as well as behavior management therapy. The relationship between Alta Mira and SBMS is not clear, nor is it clear which entity was responsible at this time under the plan for which services or, as a practical matter, which entity actually provided each service.

Syme described the plan in a memorandum to the Director of the DD–Waiver program dated September 29, 1988:

> David's current approved plan of care consists of 2 hours In–Home Behavior Management services on weekdays after his day program and 8 hours on Saturdays and Sundays during the day. Respite is employed to cover Adelante holidays and/or as requested. Four hours a month are provided for monitoring of the Behavior Management plan by SBMS.

The Alta Mira respite program was designated as the employer for respite providers as well as for Behavior Management implementors. SBMS initially did the recruiting for the staff as well as staff training to assist the Alta Mira Program in finding the appropriate providers for David's disability. The staffing plan was to have 2 P/T. persons, one to work with David on weekdays and one to work on the weekend days. 1–2 persons would be hired as backups and to prevent staff burnout.

The same memorandum described "service problems" encountered in managing the plan. Syme identified some of the contributing factors: (1) inability to attract and keep qualified employees because of the part-time nature of the work, (2) holiday staffing was difficult because many of the available personnel already had full-time jobs, (3) lack of transportation to take David on outings, and (4) anger and miscommunication between the family and various staff members. At the hearing before the hearing officer, Syme testified that she believed that the failure to find staff also stemmed from David's reputation for both self-abusive behavior and aggression towards others. It is not clear from the record which factors affected the services at issue on appeal.

It is undisputed, however, that by September 1988, the family had only used thirty-four hours of respite services. The record indicates that SBMS participated in the efforts to provide respite services. However, even though Syme, Alta Mira, and SBMS all tried to find qualified caregivers, no one succeeded in making respite services available to the Lopez family on a consistent basis.

It is also clear from the record that the Lopez family found the services provided by SBMS inadequate, and that SBMS found the Lopez family difficult. By September 1988, SBMS refused to provide any behavior management services unless the family agreed to undergo family therapy. SBMS supported its position with an evaluation done by a staff member without the family's knowledge or consent.

The Lopez family, angry that SBMS had evaluated them without their knowledge or permission, felt that any stresses in their home were directly attributable to the failure to have reliable, consistent support and refused to undergo therapy. After a meeting of family members and representatives from those entities involved in providing or attempting to provide the services at issue, SBMS concluded that it could no longer effectively provide those services. The family appears to have agreed that SBMS was correct, but there is no evidence that the family agreed to termination of any services the plan provided or that the Department in fact actually terminated respite or behavior management therapy.

The record does not indicate that there was any official action taken by the Department to terminate benefits after the September 1988 meeting. Under the current plan, David receives day care at Adelante, and home and personal care from Alta Mira. The hearing officer found that respite services are included in his care plan but they are not being received. There is no specific finding regarding behavior management therapy, behavior management implementation, or family education and training. The regulations characterize behavior management and family education and training as "ancillary services." *See* Medical Assistance Manual § 310.2064(A)(1), (2).

In May 1989, David underwent a complete physical evaluation. After the evaluation, his doctors changed his medication. Since that time, his family and care-givers have noticed improvement in his behavior, specifically, fewer aggressive outbursts. It appears that David also receives speech therapy and computer training at Adelante to increase his communication ability. The record suggests that as his communication abilities improve, his outbursts may become even less frequent.

The Lopez family requested a hearing in August 1989. At that hearing, the hearing officer stated the issue presented as whether "the CCIC program [is] responsible for providing the respite services included in the clients [sic] plan of care?" The hearing

officer concluded that the Department was taking all steps necessary to find a provider, and no more could be expected. "The situation has certainly been difficult because of all the circumstances that have taken place in this particular case. However, I cannot find the CCIC program at fault." The hearing officer found in favor of the Department.

On appeal, Lopez argues that the hearing officer's decision is arbitrary and capricious and not in accordance with the law. In addition, she argues that his findings are not supported by substantial evidence.

While this case was pending on appeal, this court assigned it to a lawyer-facilitator for purposes of pursuing possible settlement during the court's settlement week project. *See* Lynn Pickard, *Court of Appeals Reports on Settlement Week*, Vol. 30, No. 22, State Bar Bulletin at 8 (May 30, 1991). The record indicates that a settlement was reached but implementation failed. The case was restored to this court's civil docket and then assigned to a panel for decision.

## II. VALIDITY OF DECISION OF HEARING OFFICER.

■ Lopez contends the hearing officer concluded that the Department was not responsible for the lack of services because it was not directly providing the services. She also argues that this conclusion is erroneous as a matter of law. We agree with Lopez that if the Department elects to subcontract with third parties instead of providing these services directly, it remains responsible for the furnishing of such services. However, we conclude that the findings of the hearing officer are insufficient to permit this court to resolve the first issue posed on appeal. The findings of fact adopted below did not determine whether providing respite services continues to be a realistic or viable option; whether the Department has constructively terminated respite services to the Lopez family; whether the nature of David's condition and the family's conduct have prevented the Department from providing respite and family counseling; and whether the De-

partment has continued to make a good-faith effort to provide such services.

■ Federal regulations, 42 C.F.R. § 431.10(e)(3) (1990), authorize the Department to contract with outside services to provide the necessary services. State regulations authorize the case manager to evaluate the effectiveness of the initial plan of care and to revise it "as conditions warrant." Medical Assistance Manual § 310.2061(5). State regulations also authorize the case manager to reassess the individual's eligibility and need for home and community-based services at least every six months. *Id.* § 310.2061(6). "In cases where it is determined that an individual is no longer eligible or appropriate for waiver services, the case manager is responsible for ensuring a smooth transfer to other services." *Id.*

Under these regulations, the case manager has primary responsibility for making the initial determination that a client's plan of care requires revision, as well as determining that an individual is no longer eligible for waiver services. The record contains evidence that the Department reviews and then approves or rejects the case manager's plan and her recommendations for revision. The record also contains Syme's initial plan and her revisions to it, and in each case the program director signed a written form submitted by Syme. The signature appears to signify the Department's approval of the plan and of its subsequent revisions.

The regulations provide that all plans of care are subject to approval by the Department. Medical Assistance Manual § 390.-3263. "The purpose of the review is to assure cost containment and appropriate service utilization." *Id.*

■ The record does not indicate whether David's case manager believes his plan requires revision or that he is no longer eligible for services. While the record contains substantial evidence that there are problems, she apparently has not yet given up on him or his family. In addition, the hearing officer's findings indicate that respite care is included in the plan and that

Syme "is working diligently to find a provider." However, his written decision indicates that the Department is doing all it can, and the CCIC Director testified that "[if] a provider is found[,] Syme need[s] to submit another revision to put the respite back in the plan * * *."

As a consequence, the findings of fact and conclusions of law do not indicate whether the Department actually terminated any services. The parties agree that no written termination notice was ever given to Lopez. The Department admits that after the September 1988 meeting that resulted in a decision to terminate, the Department continued its efforts to find respite care. Moreover, respite services are still included in the plan. However, the parties' briefs advance arguments that the Department either actually has terminated services, or in effect should be viewed as having done so.

State regulations provide nine reasons for termination or reduction of services. The reasons are:

A. Death of the individual;

B. Whereabouts of the individual unknown;

C. Individual no longer eligible on condition of level of ICF/MR care;

D. Individual moved out of the state;

E. Voluntary withdrawal of individuals from the demonstration program;

F. Change in financial status of the individual;

G. Change in the individual's condition which warrants reduction in services;

H. Change in the individual's condition which warrants an increase in services which exceed cost of institutionalization.

I. Other.

Medical Assistance Manual § 390.3420.

The Department contends on appeal that it was justified in terminating the services, because the Lopez family voluntarily withdrew David from the program under Section 390.3420(E). The Department also justifies its decision under Section 390.-3420(I), noting the efforts made by all the involved personnel to find respite care for David. The Department argues that it should not be penalized for its failure, because of circumstances beyond its control, to implement all aspects of the plan. Lopez argues that because the Department failed to follow its own regulations, its actions are invalid. *See Taylor v. Department of Human Servs.*, 98 N.M. 314, 648 P.2d 353 (Ct.App.1982). Lopez also argues that there is insufficient evidence to support a finding that the Department has done all it can.

We conclude that the findings and conclusions contained in the record do not permit us to conduct a meaningful appellate review. Therefore, we remand with directions to the hearing officer to make additional findings and conclusions, to the Department to furnish a supplemental record, and to the parties to provide supplemental briefs.

Unless the Department has actually terminated the services in question, or has failed to make a good-faith effort to provide such services, Lopez may lack standing to challenge on appeal the failure to provide such services. *See St. Sauver v. New Mexico Peterbilt, Inc.*, 101 N.M. 84, 678 P.2d 712 (Ct.App.1984) (holding State was not "aggrieved party" and therefore had no standing to appeal; defining "aggrieved party"). If services have not actually been terminated but in fact are not being provided, the questions for the hearing officer include whether there has been a constructive termination, and, if so, whether that result is appropriate on these facts. We think the critical issues in this case are whether providers can be found; if not, whether the Department is entitled to modify the plan; what procedures should be followed in modifying the plan; whether those procedures were followed in this case; and what remedy, if any, is available and appropriate if they were not. For the guidance of the hearing officer and the parties on remand, we make the following additional comments.

■ We agree with the Department's implicit argument that if a family is unwilling to do what is reasonable and necessary to use those services that the Department can establish are dependent on a family's coop-

eration, then it would be appropriate to construe that unwillingness as a voluntary withdrawal of a child from either a program or certain benefits. The hearing officer made no finding that the Lopez family was unwilling to do what was reasonable and necessary. Further, under the regulations, it would appear that the case manager's recommendation would be a threshold requirement for termination. *See* Medical Assistance Manual § 310.2061(6); *see also* § 390.3410(B).

The record contains a handwritten note to Syme from the Director of the DD-waiver program dated September 12, 1988, indicating her support for the request for counseling and asking Syme to send a revision "ASAP." We do not know whether it is appropriate to consider the agreement reached in late September after the meeting of family members and providers as a revision. We need not address this issue, however, because there is no finding concerning the agreement reached.

■ We also agree with the Department's implicit argument that if it proves impossible to provide the respite care or other services David's family needs, then it may cease to provide those services. The record does not indicate that the parties have reached that stage. We acknowledge that, in the end, the Department has many obligations and limited resources, and only reasonable and necessary efforts in conformity with existing regulations can be expected.

Although various providers made extensive efforts to provide David with the services requested in his care plan, only SBMS has concluded that it is unable to provide the services at issue. The case manager has not recommended that efforts cease, and there is some evidence that circumstances may have changed sufficiently so that respite care may now be feasible. The testimony regarding David's medical improvement is encouraging and may make it easier for the Department to find a willing care-giver. Various statements made by the Alta Mira director suggest that respite care may now be available, given David's improvement and reduction in aggressive behavior. His 1989 care plan also indicates that his case manager believes that David

may eventually be eligible for group home living, which would make respite care unnecessary. In fact, the settlement effort that failed apparently involved an attempt at integrating David into a group home.

The issue of behavior management therapy and other services appears to be related to the provision of respite services. We do not discuss these services separately. However, the supplemental record should indicate whether these services involve any issues other than those related to the provision of respite services. Because we remand for adoption of additional findings of fact and conclusions of law, we do not address Lopez's second issue raised on appeal.

### III. CONCLUSION.

Lopez has requested attorney's fees on appeal. There appears to be no statutory or rule authority for such an award. We thank amicus for its helpful brief. The case is remanded with the following instructions:

On remand, the hearing officer may take additional evidence if, in his judgment, additional evidence would be helpful in making the additional findings and conclusions this court needs to determine the issues we have identified as critical. However, any hearing should be conducted, and additional evidence taken, within the next thirty days. Further, additional findings and conclusions should be made and a supplemental record filed with this court within forty-five days, and the parties should file simultaneous supplemental briefs within sixty days. If Lopez wishes to challenge any of the hearing officer's additional findings as lacking support in the evidence, she should specifically attack those findings and summarize all of the evidence taken in light of the relevant standard of review on appeal. *See* SCRA 1986, § 12–213(A)(3) (Cum.Supp. 1991).

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.